**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**PATRICK JACQUES,**

       **Plaintiff,**

**v.**                                        **CIVIL ACTION NO.: 3:22-CV-31
(GROH)**

**CO DAUGHRETY,**

       **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

### I.  INTRODUCTION

On March 3, 2022, the *pro se* Plaintiff, a federal prisoner who was previously incarcerated[1] at USP Hazelton, in Bruceton Mills, West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[2]

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be dismissed without

---

[1] According to the docket and the Bureau of Prisons inmate locator website, Plaintiff is currently incarcerated at USP Lee, in Pennington Gap, Virginia.  https://www.bop.gov/inmateloc/.

[2] All CM/ECF numbers cited herein are from the instant case, 3:22-CV-31, unless otherwise noted.

prejudice.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Plaintiff's Complaint

Plaintiff initiated this action alleging his rights were violated while he was incarcerated in the Northern District of West Virginia.   Plaintiff's complaint alleges five claims for relief, that: (1) while Plaintiff was in handcuffs, he was beaten by Defendant Daughrety ("Daughrety") on November 28, 2021 [ECF No. 1 at 7]; (2) Plaintiff "had a flashlight put in [his] anal by CO Daughrety"[3] [Id. at 8]; (3) Plaintiff was placed in a cell for 14 days, from November 28, 2021, through December 10, 2021, wearing only paper clothing, and without showering or being properly fed [Id.]; (4) from November 28, 2021, through December 10, 2021, Plaintiff's food was thrown through the feeding slot in the door of his cell [Id.]; and (5) Plaintiff was assaulted by Daughrety's coworkers "many times due to his actions" [Id. at 9].

According to the complaint, Plaintiff filed BP-8, BP-9, and BP-10 administrative remedies, but received no response from any of those remedies.   Id. at 5.   Plaintiff also claims that he filed a previous lawsuit dealing with the same facts involved in this action, in case number 5:21-CV-803, in the Central District of California.   Id.   However, a review of the complaint in that Bivens action reflect that it was filed on April 28, 2021, seven months before the events complained of in the instant action.   C.D.Ca. 5:21-CV-803, ECF Nos. 1, 9.   Further, the events complained of in that action involved other defendants and

---

[3]  It is unclear from the complaint whether Plaintiff alleges that a flashlight was shone on his anus or inserted into it, but liberally construing Plaintiff's pleading, the Court considers the allegation of "assault" to mean that the flashlight was used to penetrate Plaintiff's anus.

occurred at USP Victorville, in Adelanto, California.  Id.

In the instant case, Plaintiff asserts that his "anal was tormented" and he "can't produce normal bowel movement" and that there is "always blood in [his] stool".  ECF No. 1 at 9.  He asks that this action be treated as a class action civil suit "because even my family was affected [when] my father heard how I was abused [he] was hospitalized and eventually died from the stress."  Id.  For relief, Plaintiff asks for a total of $500,000.00 in damages.  Id.

**B.    Defendant's Motion to Dismiss**

On November 29, 2022, Defendant Daughrety filed a motion to dismiss for failure to state a claim, along with a memorandum and exhibits in support thereof.  ECF Nos. 38, 39, 39-1 through 39-3, 42, 42-1.  Defendant argues that: (1) Plaintiff failed to exhaust his administrative remedies before filing this action; and (2) Plaintiff's Bivens claims are barred because Plaintiff's claim presents a new Bivens cause of action, and "special factors" presented in Plaintiff's case suggest that Congress, not the judiciary, should weigh the costs and benefits of creating a new damages remedy.  ECF No. 39.

As to the facts, Defendant asserts that although Plaintiff was seen by BOP Health Services staff on November 29, 2021, Plaintiff did not report being assaulted by a BOP staff member.  ECF Nos. 39 at 2; 42 at 2; 42-1 at 52 – 55.  Further, when Plaintiff was seen by Health Services on December 1, 2021, again Plaintiff did not report any alleged physical or sexual assault.  ECF Nos. 39 at 3; 42 at 2, 42-1 at 49 – 51.

However, Defendant notes that on December 1, 2021, Daughrety issued Plaintiff an Incident Report for Code 329, destroying property valued at $100 or less.  Id. Thereafter, on December 4, 2021, for the first time Plaintiff reported that he was sexually

assaulted by being taken to a blind spot from facility surveillance cameras, where staff placed their fingers[4] in Plaintiff's anus.  ECF Nos. 39 at 3; 39-1 at 3 – 4.

Defendant contends that Plaintiff retracted his allegations under questioning by Hazelton Special Investigation Services (SIS) staff.  ECF No. 39 at 3.  Defendant cites to Plaintiff's statement that, "I am Rastafarian and it is against my religion to show my anus to another person.  I only said they placed their finger in my anus because I felt like I had been wronged when they made me show my anus.  No one put their finger in my anus I was lying."  ECF Nos. 39 at 3; 39-1 at 4.  Based on Plaintiff's retraction of his allegations, SIS closed its investigation.  Id.  After Plaintiff's transfer to USP Lee, on January 27, 2022, Plaintiff received a Health Screening, during which he denied any history of physical, emotional, and sexual abuse.  ECF Nos. 39 at 4; 42-1 at 57.

Defendant further notes that Plaintiff has filed a total of 14 administrative remedies while in custody.  ECF Nos. 39 at 4; 39-3 at 3, 6.  However, only three of Plaintiff's 14 administrative remedies were filed after November 28, 2021, the date on which Plaintiff alleges he was sexually assaulted.  Id.  The three remedies filed after November 28, 2021, concern "Staff complaints -- in SHU", "Denied access to facilities", and "DHO Appeal".  ECF No. 39-3 at 6.  Further, only one of those three remedies concerns staff behavior and alleges "staff misconduct in the form of verbal harassment".  Id. at 11.

The Court issued an Order and Roseboro notice on November 30, 2022, which advised Plaintiff of his rights and responsibilities in relation to the motion to dismiss.  ECF No. 43.  The notice further directed Plaintiff to file a response to the motion to dismiss

---

[4]  A review of the "Sexual Assault Intervention Protocol" sheet prepared on December 4, 2021, following Plaintiff's reporting, refers to digital penetration, but includes no reference to a flashlight, or penetration by a flashlight or other object.  ECF No. 39-1 at 19.

within twenty-one days.  Id.

### C.    Plaintiff's Responsive Pleadings

Plaintiff has failed to file a direct response to Defendant's motion to dismiss.

However, Plaintiff has filed two separate motions on December 9, 2022, and December 12, 2022, requesting emergency actions "due to sexual assault by staff".  ECF Nos. 46, 47.  Plaintiff's first motion for emergency action asserts that Defendant verbally harassed him on November 29, 2021, and that on or about that date Plaintiff was placed in the Special Housing Unit with paper clothing, and without toiletries for a period of 14 days.  ECF No. 46 at 2.  Plaintiff also contends his food was "toss[ed]" in his food slot on the floor.  Id. at 3.  Further, Plaintiff asserts that Daughrety and other correctional officers forced him to bend over and put a flashlight in his anus.  Id.  All of these claims, except for Plaintiff's assertion of verbal abuse, were asserted in his complaint.

Plaintiff's second emergency motion raised the same claim that Daughrety verbally harassed Plaintiff.  ECF No. 47 at 2.  Plaintiff claims that Daughrety "used force" on him to take off his clothes and bend over when correctional officer "put their flashlight in my anal".  Id.  Plaintiff contends that he did not receive medical care, and that an SIS investigator 'tried to intimidate [him] into leaving everything alone".  Id.  Plaintiff states that he agreed to "leave it alone" because he was harassed by and retaliated against by staff.  Id.  Further, Plaintiff asserts that BOP staff retaliated against him after his July 13[5] surgery, by filing a false incident report which alleged that Plaintiff had a knife.  Id. at 3 – 4.  Further, Plaintiff claims that after his mother's death in October, he was unable to access his institutional

---

[5]  Plaintiff did not assert the year of his surgery.  ECF No. 47 at 4.  However, a review of Plaintiff's medical records shows that Plaintiff received medical care at Health Services on July 13, 2022.  ECF No. 42-1 at 8. However, the records do not document that Plaintiff had surgery on that date, but that he was referred for surgery on July 13, 2022.  Id.

funds to help pay for her funeral.  Id. at 4.

**D.     Defendant's Response to Plaintiff's Motions for Emergency Action**

Defendant filed a response to Plaintiff's motions for emergency action on December 16, 2022.  ECF No. 48.  Therein, Defendant contends that "Plaintiff's motions attempt to circumnavigate the regular administrative remedy process".  Id. at 1.  Defendant argues that the majority of the issues complained of in Plaintiff's emergency motions "are the same subject matter as Plaintiff's complaint".  Id. at 2.  Further, Defendant argues that Plaintiff's other complaints, related to a Court-mandated transfer to a lower-level security facility, are without merit, because they are "not of a nature that merit the type of remedy he is requesting".  Id.  Defendant also points out that Plaintiff primarily complains of sexual assault at Hazelton, but is no longer incarcerated at that facility.  Id.  Finally, Defendant argues that Plaintiff's administrative remedy number 1141924-R1, described as a "DHO Appeal," is directly related to the allegation contained in the incident report about possession of a knife, which was submitted on November 17, 2022, and is currently being reviewed and investigated by the BOP Mid-Atlantic Regional Office.  ECF Nos. 48 at 3; 48-1 at 2; 48-3 at 2.


## III.     LEGAL STANDARD

**A.     Pro Se Litigants.**

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

### B.    Civil Rights Actions Under Bivens.

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In FDIC v. Meyer, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a Bivens claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

deter individual federal officers from committing constitutional violations." Corr. Servs.
Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in
Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional
> deprivation, he may bring a *Bivens* claim against the
> offending individual officer, subject to the defense of qualified
> immunity. The prisoner may not bring a *Bivens* claim against
> the officer's employer, the United States, or the BOP. With
> respect to the alleged constitutional deprivation, his only
> remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by
each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501
(2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988)
("section 1983 claims[7] [have] the additional pleading requirement that the 'complaint
contain a modicum of factual specificity identifying the particular conduct of defendants
that is alleged to have harmed the plaintiffs'").

### C.    Requests for Injunctive Relief

The Fourth Circuit reviews "a district court's decision to grant a preliminary
injunction under an abuse-of-discretion standard." International Refugee Assistance
Project v. Trump, 883 F.3d 233, 255 – 56 (4th Cir. 2018), as amended (Feb. 28, 2018).
The standard for granting injunctive relief was articulated by the United States Supreme
Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that
> he is likely to succeed on the merits, that he is likely to suffer
> irreparable harm in the absence of preliminary relief, that the
> balance of equities tips in his favor, and that an injunction is
> in the public interest.

---

[7] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that
Bivens actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by
42 U.S.C. § 1983.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a preliminary injunction:

> The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial."  A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

Int'l Refugee, 883 F.3d at 256 (citing WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citing Winter, 555 U.S. at 7)).   This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo.  See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").


## IV.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."   McClung v.

Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).  Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.   Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).   "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Plaintiff contends in his complaint that he attempted to exhaust his administrative remedies prior to filing the complaint.  ECF No. 1 at 4 – 5.  However, Plaintiff did not submit a copy of any of the BP-8, BP-9, or BP-10 forms which he claims to have prepared and filed.  However, Defendant's response, including exhibits, demonstrate that Plaintiff failed to exhaust or even to file his administrative remedies as to the claims raised in his complaint.  The documents provided by Defendant show that Plaintiff has only filed three administrative remedies after November 28, 2021, the date the incident complained of occurred.  ECF No. 39-3 at 6.  Only one of those three administrative remedies could arguably be related to the claims raised in the complaint.  That remedy is titled "Staff Complaints – in SHU", and is numbered 1107359-F1.  Id.  However, a review of that request for administrative remedy shows that it concerns events alleged to have occurred on January 4, 2022.  ECF No. 39-3 at 12.

As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served
> by requiring that, absent a showing of cause and prejudice,

appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.

Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[8] addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[9] remedies: (1) an informal resolution (BP-8)[10]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based

---

[8] See https://www.bop.gov/policy/progstat/1330_018.pdf.

[9] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

[10] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

In his complaint Plaintiff concedes there is a grievance procedure in the institution where the events are alleged to have occurred, and he asserts that he completed the prisoner grievance procedure.  ECF No. 1 at 4.  Plaintiff does not allege that he was prevented from filing his administrative remedy.  Nor does Plaintiff present any other documentation to support his claim that he attempted to file the mandatory administrative remedies at any level of the process, or was denied the opportunity to do so.

However, Defendant has filed documents that demonstrate Plaintiff's assertions are false.  Plaintiff filed only three administrative remedies after the alleged November 28, 2021, incident, and none of those three remedies concern the allegations raised herein.  Moreover, even if any of the three administrative remedies filed after November 28, 2021, did address Plaintiff's claims, he has failed to exhaust any of the three remedies

12

by timely appeal and response from the facility, regional office, and central office, as required by BOP PS 1330.18 § 542.10 et seq.  Accordingly, exhaustion has not occurred, and this matter is premature.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).  Because this court lacks jurisdiction, this court cannot entertain the petition.

### B.      Request for Injunctive Relief

A temporary restraining order ("TRO") may be granted under the authority of Federal Rule of Civil Procedure 65.  Rule 65(b) provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65.  The Supreme Court has long held that, "under federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 439 (1974).  The Fourth Circuit explained the different

functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil

Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo
> pending a final trial on the merits, a temporary restraining
> order is intended to preserve the status quo only until a
> preliminary injunction hearing can be held.

Pursuant to Plaintiff's motions for emergency actions [ECF Nos. 46, 47], he seeks two

separate requests for emergency relief: (1) that his custody security level should be

reduced and that he be transferred to a medium custody institution [ECF No. 46 at 4]; and

(2) an emergency transfer to another institution because Plaintiff is in fear for his life [ECF

No. 47 at 5].

It appears Plaintiff cannot meet the four-part Winter test on either ground for

issuance of a preliminary injunction:

> A plaintiff seeking a preliminary injunction must establish that
> he is likely to succeed on the merits, that he is likely to suffer
> irreparable harm in the absence of preliminary relief, that the
> balance of equities tips in his favor, and that an injunction is
> in the public interest.

555 U.S. at 20.

First, Plaintiff has not shown he is likely to succeed on the merits in regard to his

claim. "To state a claim for relief in an action brought under § 1983, [Plaintiffs] must

establish that they were deprived of a right secured by the Constitution or laws of the

United States, and that the alleged deprivation was committed under color of state law."

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).  See Thomas v. The

Salvation Army Southern Territory, 841 F.3d 632, 637 (2016).  Plaintiff has not submitted

any documentation to support his that he was sexually assaulted.  Documents submitted

by Defendant shows that Plaintiff made a claim that he was sexually assaulted, then

14

recanted his claim, with an explanation which he used to justify falsely making the claim. According to Plaintiff's complaint, a flashlight was used to penetrate his anus. In the report Plaintiff made close in time to the alleged assault, he contended that correctional officers used their fingers to penetrate his anus. ECF Nos. 1 at 8, 39-1 at 19. Further, Defendant submitted documents which demonstrate that Plaintiff did not make any sexual assault allegations against Daughrety, until December 4, 2021, three days after Daughrety filed an incident report against Plaintiff, and six days after the alleged assault. Plaintiff's contradictory and unsubstantiated claims do not show that Plaintiff is likely to succeed on the merits in regard to his claim.

Second, Plaintiff has not demonstrated that he is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff's claims for emergency relief concern his request for a transfer to a lower security facility. Plaintiff has failed to submit any records, documents, or time-sensitive justification for his request, which demonstrate a need for a temporary restraining order or preliminary injunction. Thus, he has failed to demonstrate that he is likely to suffer irreparable harm in the absence of injunctive relief.

Third, Plaintiff has failed to show that the balance of equities tips in his favor. Despite the need to demonstrate that he is in imminent danger without immediate action, Plaintiff has not alleged that any imminent harm is present, or that fairness demands any immediate action. Accordingly, Plaintiff's claims do not demonstrate that fairness dictates issuance of either a TRO or a preliminary injunction.

Fourth, Plaintiff has not demonstrated that an injunction is in the public interest. Although affording Plaintiff his constitutional rights is a concern of public interest, his request for injunctive relief is insufficient. Plaintiff's motions assert that he should be

transferred to a lower-security facility.[11]  ECF Nos. 46, 47.  His request for injunctive relief to address his custody placement does not demonstrate the requisite public interest to merit the injunction he seeks.

Because Plaintiff is unable to meet any of the four parts of the <u>Winter</u> test for issuance of an injunction, his requests for injunctive relief contained in his motions for emergency action [ECF Nos. 46, 47] are not merited.  Moreover, to the extent that Plaintiff's motion seeks to mandate action by the Defendants, Plaintiff has failed to demonstrate that he is entitled to extraordinary relief because he has failed to demonstrate that the exigencies of the situation demand such relief.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.  It is also **RECOMMENDED** that Plaintiff's request for this suit to be certified as a class action be **DENIED** pursuant to Fed.R.Civ.P. 23.

---

[11]  As recognized by the Fourth Circuit:

One of the BOP's congressionally mandated responsibilities is to determine where inmates are housed. 18 U.S.C. § 3621; 28 C.F.R. § 524.11. While the BOP's broad authority and overarching duties are set out in statute, greater detail about that process is provided by agency regulations and Program Statements. BOP Program Statements are the internal rules and guidance adopted to describe and implement certain policies and procedures established by statute or regulation.

BOP PS 5100.08 builds on 18 U.S.C. § 3621(b)'s instruction that the BOP decides where inmates are housed. It acknowledges § 3621's direction to consider various factors, including "the nature and circumstances of the offense" and "the history and characteristics of the prisoner" when deciding where to house inmates. 18 U.S.C. § 3621(b).

To implement that directive, BOP PS 5100.08 notes the BOP's goal of placing "each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the [BOP's] mission to protect society."

<u>Wilborn v. Mansukhani</u>, 795 F. App'x 157, 161 (4th Cir. 2019) (cleaned up).  !

16

Further it is **RECOMMENDED** that Plaintiff's requests for emergency injunctive relief [ECF Nos. 46, 47] be **DENIED**.  It is also **ORDERED** that Defendant's motion to dismiss [ECF No. 38] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        December 27, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE